This Memorandum constitutes findings of fact and conclusions of law as required by Fed.R.Bankr.P. 7052.

Walker & Walker, P.C., John A. Walker, Jr., Knoxville, TN, for trustee.

Teresa Bandy Reall, Nashville, TN, for Com'r of Revenue for State of Tennessee.

*MEMORANDUM ON TRUSTEE'S OBJECTION TO CLAIM*

In re CLAIMS GROUP ADMINISTRATORS, INC., Debtor.

Bankruptcy No. 92–32310.

United States Bankruptcy Court, E.D. Tennessee.

May 2, 1995.

RICHARD S. STAIR, Jr., Chief Judge.

The debtor, Claims Group Administrators, Inc., commenced this Chapter 7 bankruptcy case on May 7, 1992. The Trustee, Mary C. Walker, filed an Objection to Claim on March 2, 1995, asserting that the Tennessee Department of Revenue's Proof of Claim was filed after the September 14, 1992 claims bar date and that payment of the Department's claim should, therefore, be subordinated pursuant to 11 U.S.C.A. § 726(a)(3) (West 1993). The Trustee and the Department of Revenue have submitted this matter to the court on written Stipulations of Fact filed April 10, 1995, and on briefs.

The issue to be determined in this contested proceeding, as set forth in the pretrial Order entered April 6, 1995, is

whether payment of the unsecured claim filed by the Commissioner of Revenue of the State of Tennessee should be subordinated under 11 U.S.C. § 726(a)(3) or whether the claim, as to the $7,570.00 unsecured priority portion, should be allowed and paid as a timely-filed claim pursuant to 11 U.S.C. § 726(a)(1), and whether the $890.60 unsecured nonpriority claim should be allowed and paid as timely filed pursuant to 11 U.S.C. § 726(a)(2).

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(A), (O) (West 1993).

**I**

The facts relevant to the resolution of the Trustee's Objection are essentially undisputed. The Trustee and Department of Revenue have stipulated that the debtor commenced this bankruptcy case under Chapter 7 on May 12, 1992;[1] that the first meeting of creditors was originally set for June 16, 1992,

---

**1.** This stipulation is incorrect. The debtor's petition was actually filed on May 7, 1992.

but was continued to June 22, 1992; that the Department of Revenue received notice of the debtor's bankruptcy case on July 9, 1992,[2] but did not receive notice of the September 14, 1992 claims bar date; and that the Department of Revenue was informed that the debtor's bankruptcy case was filed on May 5, 1992,[3] and that the first meeting of creditors was on June 22, 1992.

The Department of Revenue's Proof of Claim, of which the court takes judicial notice pursuant to Fed.R.Evid. 201, was filed on September 21, 1992,[4] in the amount of $8,460.60, comprised of a $7,570.00 unsecured priority claim for franchise taxes of $7,125.00 and prepetition interest of $445.00, and an $890.60 unsecured nonpriority claim for a late-charge penalty. The Legal Claims Summary Sheet affixed to the Proof of Claim states that the debtor's petition was filed on May 7, 1992, that the first meeting of creditors was held on June 22, 1992, and that the penalty and interest reported on the Proof of Claim are "[f]igured to" May 7, 1992.

## II

In this case, the bar date for filing claims was fixed pursuant to Fed.R.Bankr.P. 3002(c), which provides in material part: "In a chapter 7 liquidation ... case, a proof of claim shall be filed within 90 days after the first date set for the meeting of creditors called pursuant to § 341(a) of the Code...." The first meeting of creditors was scheduled for June 16, 1992, and the claims bar date was September 14, 1992. Although the Department did not receive notice of the claims bar date, it did have notice of the debtor's bankruptcy case as of July 9, 1992,[5] and thereafter tardily filed its Proof of Claim seven days after the bar date.[6] *See* 11 U.S.C.A. § 726(a)(2)(C)(i) (West 1993) (using the phrase "notice or actual knowledge of the case" as opposed to the claims bar date); *United States v. Chavis (In re Chavis)*, 47 F.3d 818 (6th Cir.1995) (using similar phrases that stress the importance of a creditor's notice of the bankruptcy as opposed to notice of the claims bar date); *Internal Revenue Serv. v. Century Boat Co. (In re Century Boat Co.)*, 986 F.2d 154 (6th Cir.1993) (same); *United States v. Cardinal Mine Supply, Inc.*, 916 F.2d 1087 (6th Cir.1990) (same); *United States v. Ginley (In re Johnson)*, 901 F.2d 513, 520 (6th Cir.1990) ("[W]e cannot conclude that any alleged ambiguity [in the notice] salvages the untimely claim."); *see also Kilbarr Corp. v. General Servs. Admin. (In re Remington Rand Corp.)*, 836 F.2d 825, 833 (3d Cir.1988).

## III

Because proof of the Department's unsecured claim was not timely filed, the Trustee argues that it must be subordinated pursuant to § 726 of the Bankruptcy Code, which provides in material part:

**2.** Although the parties did not stipulate the July 9, 1992 date in their written Stipulations of Fact filed with the court, both the Trustee and Department of Revenue agree to this date in their briefs. As there is no dispute that the Department received notice of the debtor's bankruptcy case on that date, the court will accordingly deem this fact stipulated.

**3.** The bankruptcy petition was signed on May 5, 1992, but filed on May 7, 1992.

**4.** The Department of Revenue incorrectly alleges in its response to the Trustee's Objection that it filed its Proof of Claim on September 18, 1992. However, the Department states in its brief that it does not dispute the facts and dates set forth in the Trustee's brief, which include that the Claim was filed on September 21, 1992.

**5.** *See supra* note 2.

**6.** The Due Process Clause of the Fifth Amendment need not be discussed in this case. *See South Carolina v. Katzenbach*, 383 U.S. 301, 323, 86 S.Ct. 803, 816, 15 L.Ed.2d 769 (1966) ("The word 'person' in the context of the Due Process Clause ... cannot, by any reasonable mode of interpretation, be expanded to encompass the States of the Union...."); *United States v. Cardinal Mine Supply, Inc.*, 916 F.2d 1087, 1089–91 (6th Cir.1990). The Department of Revenue received notice of the bankruptcy case more than two months prior to the claims bar date, and pursuant to Fed.R.Bankr.P. 3002(c)(1), was entitled to file a motion seeking an extension of the claims bar date prior to the expiration of the claims period. *See United States v. Ginley (In re Johnson)*, 901 F.2d 513, 522 (6th Cir.1990); *In re Larry Merritt Co.*, 166 B.R. 875, 880 (Bankr. E.D.Tenn.1993), *aff'd*, 169 B.R. 141 (E.D.Tenn. 1994), *appeal docketed*, No. 94–6073 (6th Cir. Aug. 25, 1994). No such motion was ever filed.

(a) Except as provided in section 510 of this title, property of the estate shall be distributed—

(1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title;

(2) second, in payment of any allowed unsecured claim, other than a claim of a kind specified in paragraph (1), (3), or (4) of this subsection, proof of which is—

(A) timely filed under section 501(a) of this title;

(B) timely filed under section 501(b) or 501(c) of this title; or

(C) tardily filed under section 501(a) of this title, if—

(i) the creditor that holds such claim did not have notice or actual knowledge of the case in time for timely filing of a proof of such claim under section 501(a) of this title; and

(ii) proof of such claim is filed in time to permit payment of such claim;

(3) third, in payment of any allowed unsecured claim proof of which is tardily filed under section 501(a) of this title other than a claim of the kind specified in paragraph (2)(C) of this subsection;

(4) fourth, in payment of any allowed claim, whether secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim[.]

11 U.S.C.A. § 726 (West 1993).

This section was amended by § 213(b) of the Bankruptcy Reform Act of 1994 to include at the end of subsection (a)(1) the phrase "proof of which is timely filed under section 501 of this title or tardily filed before the date on which the trustee commences distribution under this section." § 726(a)(1) (West Supp.1995). Section 502 of the Bankruptcy Code, regarding allowance of claims, was also amended by § 213(a) of the Reform Act to provide that a claim shall be disallowed when

proof of such claim is not timely filed, except to the extent tardily filed as permitted under paragraph (1), (2), or (3) of section 726(a) of this title or under the Federal Rules of Bankruptcy Procedure, except that a claim of a governmental unit shall be timely filed if it is filed before 180 days after the date of the order for relief or such later time as the Federal Rules of Bankruptcy Procedure may provide.

11 U.S.C.A. § 502(b)(9) (West Supp.1995).

Although these 1994 amendments to the Bankruptcy Code are inapplicable to this case,[7] they evidence "Congress' intent to demand that claims be timely filed," *United States v. Chavis (In re Chavis),* 47 F.3d 818, 823 (6th Cir.1995), and the intent that under § 726(a)(1), all claims specified in § 507 of the Bankruptcy Code, whether timely or tardily filed, are to be paid first. However, the Trustee asserts under the authority of this court's decision in *In re Larry Merritt Co.,* 166 B.R. 875 (Bankr.E.D.Tenn.1993), *aff'd,* 169 B.R. 141 (E.D.Tenn.1994), *appeal docketed,* No. 94–6073 (6th Cir. Aug. 25, 1994), that the Department of Revenue's claim should be subordinated pursuant to § 726(a)(3).

In *Larry Merritt Co.,* this court determined that when a priority creditor knowingly fails to comply with the Rule 3002 bar date, its claim must be subordinated pursuant to § 726(a)(3). 166 B.R. at 880. In affirming the bankruptcy court, the district court also held that the IRS's tax claim, filed after the bar date of which the IRS had notice, was properly subordinated pursuant to § 726(a)(3) based on "the Sixth Circuit's application of Bankruptcy Rule 3002 ..., and considering the statutory policy of orderly distribution and settlement of estates." 169 B.R. at 143.

Both this court's decision and the district court's decision in *Larry Merritt Co.* were based on an interpretation of two Sixth Cir-

7. Section 702(b)(1) of the Bankruptcy Reform Act of 1994 provides that the amendments are not applicable to "cases commenced under title 11 of the United States Code before [October 22, 1994]," except in certain instances which are inapplicable in this case.

cuit cases, *Internal Revenue Service v. Century Boat Co. (In re Century Boat Co.)*, 986 F.2d 154 (6th Cir.1993), and *United States v. Cardinal Mine Supply, Inc.*, 916 F.2d 1087 (6th Cir.1990).[8] In both *Cardinal Mine Supply* and *Century Boat Co.*, the IRS was entitled to receive distribution of its priority claim under § 726(a)(1) although it had failed to timely file its proof of claim. The key to both decisions is that the IRS lacked notice of the Chapter 7 bankruptcy case until several months after expiration of the claims bar date.[9]

The holding of *Cardinal Mine Supply* is best explained in the Sixth Circuit's *Century Boat Co.* decision:

> *Cardinal Mine Supply* did not establish the rule that a priority creditor who files an untimely proof of claim because it did not receive notice of the bankruptcy will always receive priority distribution despite the untimely filing. We simply decided then, and we reaffirm today [in *Century Boat Co.*], the principle that a priority creditor who fails to receive notice of the bankruptcy and consequently files an untimely proof of claim is not barred from receiving priority distribution as a matter of law.... *Cardinal Mine Supply* established a narrow exception for priority creditors who lack notice of the bankruptcy. Not every priority creditor, however, may invoke the holding in *Cardinal Mine Supply*. At a minimum, the creditor [lacking notice of the bankruptcy case up to the claims bar date] must file its proof of claim before the trustee makes any distribution from the estate and before the bankruptcy court closes the estate.

986 F.2d at 158.

Consistent with *Cardinal Mine Supply*, the court concluded in *Century Boat Co.* that

the IRS's untimely claim "was as much the result of shoddy reporting and record-keeping on the part of Century Boat as it was the result of actions by the Internal Revenue Service." *Id.* Therefore, because the estate had not been distributed at the time the IRS filed its claim, the court held that it would be paid as a priority claim under § 726(a)(1). *Id.*

Since the rendering of the opinions in *Larry Merritt Co.*, *Century Boat Co.*, and *Cardinal Mine Supply*, the Sixth Circuit has rendered its decision in *Chavis* on the issue of untimely filed claims and Congress has enacted the Bankruptcy Reform Act of 1994. In *Chavis*, the Sixth Circuit held that in Chapter 13 cases, untimely filed claims must be disallowed, except where excusable neglect would permit otherwise. *See* 47 F.3d at 820, 824. In analyzing decisions in Chapter 7 cases by the Second and Ninth Circuit Courts of Appeals which hold to the contrary, the court noted that "there are fundamental differences between Chapter 7 and Chapter 13 bankruptcies.... In a Chapter 7 action, the debtor's non-exempt assets are liquidated and the proceeds are distributed to the creditors. Accordingly, even late-filed claims must be paid before any distribution to the debtor may be made."[10] *Id.* at 823–24.

The Sixth Circuit's interpretation of the Code in *Chavis* arguably leads to a result in Chapter 7 cases that differs from the holding in *Larry Merritt Co.* *Chavis* requires that in Chapter 13 cases, the Bankruptcy Code and Rules should be "harmonized" as follows:

> [Section] 501 creates the substantive right to file a claim and identifies the parties

---

8. In *Larry Merritt Co.*, the district court also relied on the Sixth Circuit opinion of *United States v. Ginley (In re Johnson)*, 901 F.2d 513 (6th Cir.1990). In *Johnson*, the court affirmed the bankruptcy and district courts' holding that a claim for administrative expenses incurred prior to the conversion of the debtor's Chapter 11 bankruptcy case to Chapter 7 would be disallowed if it was filed outside the bar date by a creditor that had notice of the bankruptcy proceedings. *Id.* at 522.

9. Conversely, in *Larry Merritt Co.* and the present case, the creditor had notice of the bankruptcy

case well in advance of the claims bar date but nonetheless failed to timely file its proof of claim. However, this case and the cases of *Larry Merritt Co.*, *Cardinal Mine Supply*, and *Century Boat Co.* are analogous in one important respect: the underlying bankruptcy cases were all commenced under Chapter 7.

10. This statement by the Sixth Circuit can be interpreted to support the conclusion that in this Chapter 7 case, the Department's claim may be subordinated under § 726(a)(3), but not disallowed.

holding that right; § 502 states that a claim, filed in accordance with § 501, is allowed unless a party in interest objects; § 501 contemplates a timeliness requirement; Rule 3002 designates when a claim is timely filed (*i.e.*, § 501 incorporates Rule 3002); and, because § 501 incorporates Rule 3002, and because § 502 presupposes compliance with § 501, compliance with Rule 3002 (*i.e.*, timeliness) is a prerequisite to § 502 allowance. The Bankruptcy Code's legislative history supports this result. Indeed, Congress anticipated that the Rules of Bankruptcy Procedure would set the time limits, the form, and the procedure for filing claims.

*Id.* at 823 (footnote omitted). When this analysis is applied in Chapter 7 cases, taking into consideration the 1994 amendments to the Bankruptcy Code, § 726(a)(1) would arguably lead to the conclusion that all claims specified in § 507 of the Bankruptcy Code, whether timely or tardily filed, are to be paid first.

Such a finding would be consistent with the Second Circuit's interpretation of § 726(a)(1) in *In re Vecchio*, 20 F.3d 555 (2d Cir.1994), prior to the enactment of the Bankruptcy Reform Act:

Section 726(a)(1) accords priority status to claims specified in § 507 without regard to the timeliness of their filing. In sharp contrast, subsections (a)(2) and (a)(3) of § 726 categorize non-priority unsecured claims into those that are timely filed, those that are tardily filed where the creditor did not have proper notice of the bankruptcy, and those that are tardily filed where the creditor received proper notice of the bankruptcy. Thus, Congress plainly knew how to distinguish between timely and tardily filed claims, yet did not make that distinction for claims filed under § 507. The absence of a timeliness distinction in § 726(a)(1) strongly suggests that this subsection encompasses all priority claims whenever filed.

. . . .

We accept ... that our straightforward reading of § 726(a) results in no penalty for priority creditors who, with notice of the bankruptcy, fail to file their claims within prescribed deadlines. To be sure, the logic of our reading of § 726(a) leads to the conclusion that first priority payment could be accorded even to claims filed after the distribution of the estate's assets. However, we believe that bankruptcy courts can adequately address these concerns through the careful exercise of their discretion over the entry of disgorgement orders.... In addition, bankruptcy courts have authority to subordinate a late filed priority claim under principles of equitable subordination.

*Id.* at 557–60 (citation omitted). The Sixth Circuit discussed and quoted the Second Circuit's *Vecchio* opinion in *Chavis*, and although it did not adopt the Second Circuit's holding or analysis, the Sixth Circuit did state that the "fundamental differences between Chapter 7 and Chapter 13 bankruptcies ... effectively limit" *Vecchio*. *Chavis*, 47 F.3d at 823.

The legal issue in this case turns on whether the Sixth Circuit's discussion in *Chavis* of *Vecchio* 's § 726(a)(1) interpretation and the Circuit's reliance on the Bankruptcy Reform Act of 1994 to evidence congressional intent effectively determines the issue not addressed in *Century Boat Co.* and *Cardinal Mine Supply:* Whether priority distribution of a claim under § 726(a)(1) is afforded to a creditor regardless of whether it had notice of the bankruptcy case in time to meet the filing requirements established in Bankruptcy Rule 3002(c). *See Century Boat Co.*, 986 F.2d at 157–58. This court, in *Larry Merritt Co.*, decided this issue in favor of timeliness as opposed to priority, which is supported by the holding in *Chavis:* "Because ... the Bankruptcy Reform Act of 1994 reveals that Congress now expects unsecured creditors' claims to be timely filed, [a] bankruptcy court's reliance on Rule 3002 (prior to the Bankruptcy Reform Act's effective date) [is] proper." 47 F.3d at 824.

Conversely, the rationale of *Chavis* does not support a conclusion identical to that found in *Larry Merritt Co.* The Bankruptcy Reform Act of 1994 evidences that Congress intended § 726(a)(1) to apply to timely and tardily filed priority claims. *See In re Monroe Distrib., Inc.*, 176 B.R. 458, 466 (Bankr.

N.D.Ohio 1995). This interpretation of § 726(a)(1) prior to the Reform Act is supported by the Second Circuit's opinion in *Vecchio*. Moreover, in rejecting the argument that a creditor "may not invoke the holding of *Cardinal Mine Supply* because it did not file its proof of claim against the estate promptly after learning of the bankruptcy," the Sixth Circuit has stated that such an argument "seems counter to the holding in *Cardinal Mine Supply* that time of filing is less important than the priority status of a given claim." *Century Boat Co.,* 986 F.2d at 158.

Furthermore, the Sixth Circuit's interpretation of § 726(a)(1) in *Cardinal Mine Supply* is consistent with the interpretation found in *Vecchio.* The Sixth Circuit stated:

> The language of section 726 does not itself bar tardily filed priority claims. Subsection (a)(1) merely provides that the order of distribution of priority claims will be the order specified in section 507. This subsection makes no distinction between tardily filed and timely filed priority claims or between tardily filed claims where the priority creditor had notice or had no notice. . . . There are valid reasons for permitting all tardily filed priority claims to be paid whether or not the creditor had notice. . . . Congress has chosen to place certain taxes in the privileged category. Congress has expressed itself that these claims are to be paid first. Since their priority is set in the statute, it is reasonable that that priority is more important than whether they were tardily filed *either because they had received no notice of the bankruptcy or for some other reason.*

916 F.2d at 1091 (emphasis added).

Numerous courts have determined that the Sixth Circuit's interpretation of § 726(a)(1) in

*Cardinal Mine Supply* was limited by the court's *Century Boat Co.* decision, which states that "*Cardinal Mine Supply* established a narrow exception for priority creditors who lack notice of the bankruptcy."[11] 986 F.2d at 158; *see, e.g., In re Cole,* 172 B.R. 287, 290 (Bankr.W.D.Mo.1994). In addition, the district court in *Larry Merritt Co.,* in affirming this court, rejected the holding of *Vecchio* under the following rationale:

> The problem with the Second Circuit's rigid interpretation and application of § 726 is that in practice it allows claims under § 726(a)(1) to retain their priority indefinitely. . . . Indeed, it is no more "absurd" to subordinate such claims [that are not timely filed], than to permit indefinite priority.
>
> Although the *Vecchio* court purported to rely on the Sixth Circuit decision in *Cardinal Mine Supply,* it effectively ignored the *Century Boat* holding, which clearly recognized the continued validity of Bankruptcy Rule 3002. In addition, the *Vecchio* court acknowledged that "the logic of [its] reading of § 726(a) leads to the conclusion that first priority payment could be accorded even to claims filed *after* the distribution of the estate's assets." While the court in *dictum* stated that it believed the bankruptcy courts could adequately address this concern under principles of equitable subordination . . . and through the use of disgorgement orders, numerous other scenarios exist that could lead to untoward and onerous results, especially in view of the Bankruptcy Code's policies of finality and providing a fresh start.

169 B.R. at 143 (emphasis added and alteration in original) (citations omitted) (quoting *Vecchio,* 20 F.3d at 558, 560).

> *See generally United States v. Cardinal Mine Supply, Inc.,* 916 F.2d 1087, 1091 (6th Cir. 1990) ("There are valid reasons for permitting all tardily filed priority claims to be paid whether or not the creditor had notice."). *But see In re Century Boat Co.,* 986 F.2d 154, 158 (6th Cir.1993) ("Generally, every creditor will adhere to the timing requirements established in Bankruptcy Rule 3002. *Cardinal Mine Supply* established a narrow exception for priority creditors who lack notice of the bankruptcy."). *Chavis,* 47 F.3d at 823.

---

**11.** The Sixth Circuit arguably recognized in *Chavis* that its *Century Boat Co.* decision placed this limitation on *Cardinal Mine Supply.* In *Chavis,* the court discussed and quoted extensively from *United States v. Towers (In re Pacific Atlantic Trading Co.),* 33 F.3d 1064, 1067 (9th Cir.1994), in which the Ninth Circuit held that the IRS was entitled to priority distribution under § 726(a)(1) although it knowingly failed to timely file its priority claim. After a lengthy quotation of and pinpoint citation to *Towers,* the Sixth Circuit made the following comment in citation form:

The Sixth Circuit's *Cardinal Mine Supply* and *Century Boat Co.* decisions are binding on this court and those opinions do not permit the court to find that a priority creditor, having notice of the bankruptcy in ample time to permit it to file its claim, will receive priority distribution under § 726(a)(1) regardless of whether it files its claim within the period set forth in Fed.R.Bankr.P. 3002. *But see Monroe Distrib.*, 176 B.R. at 462–66. The Sixth Circuit has stated that *Cardinal Mine Supply* "established a narrow exception for priority creditors who lack notice of the bankruptcy," and has not interpreted the pre–Reform Act version of § 726(a)(1) to allow a priority creditor with notice of the bankruptcy case in time to permit the timely filing of a proof of claim to receive priority distribution regardless of whether its claim was timely or tardily filed. *Century Boat Co.*, 986 F.2d at 158. Therefore, the court will continue to follow its decision in *Larry Merritt Co.*, as affirmed by the district court, and the Sixth Circuit's decisions in *Cardinal Mine Supply* and *Century Boat Co.* The Department of Revenue's unsecured priority claim, which would be entitled to priority distribution under § 726(a)(1) if timely filed, will be subordinated and entitled to distribution under § 726(a)(3).[12]

An appropriate order will be entered.

### *ORDER*

For the reasons set forth in the Memorandum on Trustee's Objection to Claim filed this date, the court directs the following:

1. The Trustee's Objection to Claim filed March 2, 1995, is SUSTAINED.

2. The Tennessee Department of Revenue's claim for $7,570.00 in franchise taxes and prepetition interest is subordinated and is entitled to distribution under 11 U.S.C.A. § 726(a)(3) (West 1993).

3. The Tennessee Department of Revenue's claim of $890.60 for a late-charge penalty is entitled to distribution under 11 U.S.C.A. § 726(a)(4) (West 1993).

SO ORDERED.

---

12. The Department of Revenue's unsecured nonpriority claim for a late-charge penalty must be subordinated to the fourth level of distribution established under § 726(a)(4), regardless of whether the claim was timely or tardily filed. *Larry Merritt Co.*, 166 B.R. at 877 n. 3.